IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER DINGER, | ) | CASE NO.  5:23-CV-00275-SL |
| | ) | |
| Petitioner, | ) | |
| | ) | UNITED STATES DISTRICT JUDGE |
| vs. | ) | SARA LIOI |
| | ) | |
| WARDEN JAY FORSHEY[1], | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| Respondent. | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| | ) | |

This matter is before the Magistrate Judge pursuant to Local Rule 72.2.  Before the Court is the Petition of Christopher Dinger ("Dinger" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. Dinger is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case *State v. Dinger,* Stark County Court of Common Pleas Case No. 2020-CR-1128.  For the following reasons, the undersigned recommends that the Petition be DENIED.

## I.      Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state appellate court summarized the facts underlying Dinger's conviction as follows:

> {¶2} Appellant and K.L., the victim in this case, were involved in a turbulent romantic relationship, which K.L. attempted to end. Appellant was unhappy with K.L.'s attempts to end the relationship and began following her. Appellant went to K.L.'s home at 4:00 a.m. one morning, uninvited, because he suspected she was seeing someone else. On a different

---

[1] On May 9, 2024, Defendant George A. Frederick replaced Defendant Warden Jay Forshey.

occasion, Appellant approached K.L. and her friend, but fled when they threatened to call the police.

{¶3} On June 16, 2020, K.L. was at the home of her friend, M.D., watching television. Appellant arrived at M.D.'s home, driving a black Chevrolet Camaro convertible. Appellant pounded on the door of the residence, demanding that K.L. come outside. M.D. answered the door, and Appellant pushed his way past M.D. Appellant grabbed K.L., covered her in a blanket, threw her over his shoulder, put her in his car, and drove away.

{¶4} Because of the turbulent nature of K.L.'s relationship with Appellant, she made a pact with her sister, B.L., to check in via text messaging or calling every hour, on the hour. When K.L. failed to check in with B.L. on June 17, 2020, and did not answer her phone, K.L.'s sister called M.D. After M.D. told B.L. what happened with Appellant, B.L. called the police.

{¶5} Canton City Police Officer Joseph Barnhouse was assigned to investigate, alongside Detective Daniel Szaniszlo. Police pinged both K.L.'s and Appellant's cell phones in an effort to locate K.L. K.L.'s phone was turned off. When police drove to Appellant's apartment, they noted a black Chevrolet Camaro convertible parked outside. While the officers were looking at the vehicle, a woman came up to them. The woman told officers the person who drives the Camaro lives in the apartment above her, and was always fighting with his girlfriend. She told police she heard arguing from the apartment earlier, but had not heard anything recently.

{¶6} Police knocked on the door of Appellant's apartment, announcing they were police and calling Appellant's name. They received no response. Officers breached the door with a battering ram, and apprehended Appellant. After they affirmed to K.L. it was safe to come out, K.L. emerged from the bedroom. She was unharmed except for a red mark on her neck, but appeared very distraught, upset, and disheveled. Upon questioning, K.L.'s statement lined up with the account of the events given to police by M.D. Police learned from K.L. Appellant put a pillow over her face to keep her from calling out when police knocked on the door. Police found K.L.'s cell phone on Appellant's person.

{¶7} Appellant was indicted by the Stark County Grand Jury on one count of kidnapping and one count of menacing by stalking. Prior to trial, Appellant was represented by three different attorneys, all of whom withdrew, and all of whom Appellant filed grievances against. At a hearing on October 27, 2020, at which his third counsel requested permission to withdraw, Appellant informed the court he wanted to represent himself. After a lengthy colloquy on the record, Appellant executed a waiver of counsel. The trial court appointed standby counsel.

{¶8} The case proceeded to trial on November 4, 2020. Appellant conducted voir dire and gave an opening statement *pro se*. While Appellant was cross-examining the State's first witness, the trial court called a break. Outside the presence of the jury, Appellant asked for standby counsel to "step in." Tr. II, 111. Standby counsel first moved to withdraw, which the trial court denied. Standby counsel then moved for a continuance.[1] The motion was denied. The trial court recessed for about ninety minutes to allow Appellant and standby counsel time to confer. After the recess, Appellant informed the trial court he wished to continue representing himself.

{¶9} The jury found Appellant guilty of both charges, and Appellant was convicted as charged. The trial court sentenced Appellant to eight to twelve years incarceration for kidnapping and eighteen months incarceration for menacing by stalking, to be served concurrently.

*State v. Dinger*, 5th Dist. Stark No. 2020CA00177, 2022-Ohio-608, ¶¶ 1-9, *motion for delayed appeal granted,* 167 Ohio St.3d 1457, 2022-Ohio-2446, 190 N.E.3d 634, ¶¶ 1-9, and *appeal not allowed,* 168 Ohio St.3d 1406, 2022-Ohio-3546, 195 N.E.3d 1045, ¶¶ 1-9.

## II. Procedural History

### A. Trial Court Proceedings

On July 13, 2020, the Stark County Grand Jury issued an indictment in case number 2020-CR-1128, charging Dinger with one count of kidnapping in violation of R.C. §2905.01(A)(3)(C)(1), a felony of the first degree, and one count of menacing by stalking in violation of R.C. §2903.21(A)(1)(B), a felony of the fourth degree. (Doc. No. 22-1, PageID # 192-194.) Dinger entered pleas of not guilty to all charges. (*Id*., PageID # 198.)

On September 4, 2020, Dinger filed a notice of his intention to proceed *pro se*, citing alleged Rules of Professional Conduct violations committed by his attorney, T. Graham and informing the court he filed a grievance against him. (*Id*., PageID # 199-200.) Attorney Graham moved to withdraw as counsel shortly thereafter citing deterioration of the attorney-client relationship, which was granted on September 30, 2020. (*Id*., PageID # 201-202.) Attorney M. Makkos was appointed as new counsel for Dinger. (*Id*., PageID #

203.) On October 21, 2020, Dinger again notified the court of his intention to proceed *pro se*, indicating he had filed a grievance against Attorney Makkos for violations of the Rules of Professional Conduct. (*Id.*, PageID # 204-205.) An oral motion to withdraw as counsel by Attorney Makkos was granted October 29, 2020. (*Id.*, PageID # 206.) On October 29, 2020 the court appointed Attorney A. Ruhl as standby counsel for Dinger, and Dinger filed a "Waiver of Counsel" acknowledging he waived all rights to have counsel present and understood that the Court was appointing standby counsel if he decided to stop representing himself. (*Id.*, PageID # 207-208.) The case proceeded to jury trial and on November 4, 2020, Dinger was found guilty on both counts and sentenced an aggregate term of eight to twelve years. (*Id.*, PageID # 209-216.)

On November 12, 2020, Dinger filed a *pro se* motion for acquittal pursuant to Crim. R. 29(C), alleging the State lacked sufficient evidence because the victim and several other witnesses were not present for trial. (*Id.*, PageID # 217-291.) The State responded on November 16, 2020, requesting Dinger's motion be denied and asserting Dinger was able to make his motion for acquittal during the close of the State's case and at the end of his own case, despite them being denied during trial. (*Id.*, PageID # 220-221.) In the latter half of November 2020 and beginning of December 2020, Dinger filed several motions, including a motion for resentencing, a response to the State's motion for denial, a motion to redact all evidence admitted by himself and the State during trial, an amendment to his motion for acquittal, and a letter of facts. (*Id.*, PageID # 222-236.) All were denied on January 22, 2021. (*Id.*, PageID # 237-239.)

**B.    Direct Appeal**

Dinger, proceeding *pro se*, filed a timely notice of appeal to the Fifth District Court of Appeals, Stark County, Ohio, on December 11, 2020. (Doc. No. 22-1, PageID # 240.)  In his brief, he raised the following assignments of error:

I.  The appellant was denied effective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constiution [sic] and Article 1, Section 10 of the Ohio Constitution. [sic].

II.  The State failed to present sufficient evidence to sustain a conviction against the appellant.

III.  The appellant's conviction was not supported by the manifest weight of the evidence presented.

IV.  The trial court abused its discretion by failing to grant a continuance when standby counsel moved to withdraw during trial plainly erred by failing to grant a continuance during trial. [sic]

(*Id*., PageID # 241-276.) The State filed a brief in response. (*Id*., PageID # 277-299.)

On March 2, 2022, the state appellate court found none of Dinger's assignments of error to be well-taken and affirmed the trial court's judgment. (*Id*., PageID # 300-313.) On May 18, 2022, Dinger, proceeding *pro se*, filed a motion for leave to file a delayed appeal and a notice of appeal with the Supreme Court of Ohio. (*Id*., PageID # 314-335.) The Supreme Court of Ohio granted his motion for leave to file a delayed appeal. (*Id*., PageID # 338.) Dinger's Memorandum of Support of Jurisdiction was filed on August 15, 2022. (*Id*., PageID # 339-377.) In his Memorandum, Dinger raised the following Propositions of Law:

I.  Appellant was deprived of his Sixth and Fourteenth Amendment and Article 1 Section 10 of the Ohio Constitution Right to Effective Counsel when the appointed standby counsel moved to withdraw as counsel during trial.

II.  The State failed to present sufficient evidence to sustain a conviction against the Appellant, and the conviction must be reversed.

III.  The jury fundamentally lost its way as Appellant's conviction was against the manifest weight of the evidence.

IV.  The trial court abused its discretion when it failed to grant a reasonable continuance after standby counsel attempted to wothdraw [sic].

(*Id*.) The State filed a response on August 24, 2022 (*Id*., PageID # 378-388.)

On October 11, 2022, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). (*Id*., PageID # 389; Decision 22-0606.)

5

**C.      Post-Conviction Filings**

On July 14, 2022, Dinger, proceeding *pro se*, filed a petition to vacate or set aside his judgment

and requested an evidentiary hearing. (Doc. No. 22-1, PageID # 390-393.) He set forth the following

claims:

> I.      State of constitutional claim: Sixth Amendment – was denied the rights of
> the accused in Criminal Prosecutions. Confrontation Clause (Face to Face).
> Short statement of facts supporting the claim: Their [sic] was no alleged
> victim at trial or witnesses that were on the prosecutors witness list.
> Evidence to support the claim: No alleged victim was at trial or got on the
> stand to be confronted or to be cross examed [sic]. Cops did not witness
> anything. Petitioner requests assistance of an attorney, investigator and/or
> body language expert.
>
> II.      State of constitutional claim: Was deprived his Fourteenth Constitutional
> Amendment.
> Short statement of facts supporting the claim: When the appointed stand by
> [sic] Counsel was the counsel of the defendant and moved to withdraw as
> counsel during trial. Which lead to not having confidence in Angel Rhul
> [sic] stand by counsel to fully represent the defendant per professional Rules
> of Conduct as well.
> Evidence to support the claim: Trial Transcript (pp. 111, Line 21-22)

(*Id.*)

The State filed a response, requesting the court dismiss Dinger's petition under the theory of *res*

*judicata* as well as Dinger's untimely submission. (Id., PageID # 394-398.) The court denied Dinger's

petition as untimely on June 21, 2022, as he filed his petition more than one year after the date on which

the trial transcript was filed in the Court of Appeals, noting further that Dinger failed to demonstrate

"substantive grounds for relief" entitling him to an evidentiary hearing. (*Id.*, PageID # 399-401.)

**D.      Application to Reopen Appeal under Ohio App. R. 26(B)**

On August 15, 2022, Dinger filed a *pro se* Application to reopen appeal pursuant to Ohio App. R. 26(B).

(Doc. No. 22-1, PageID # 402-414.) Dinger's Application raised the following arguments:

> I.      The trial court erred when it violated the Sixth Amendment of the U.S.
> Constitution – Confrontation Clause Face to Face.

6

       II.       Prosecutor Misconduct.

(*Id*.)

The State filed a memorandum in opposition on August 23, 2022. (*Id*., PageID # 415-420.) The state appellate court ultimately denied Dinger's application as untimely on August 31, 2020. (*Id*., PageID # 421-422.)

On October 24, 2022, Dinger filed a *pro se* motion for leave to file a petition for post-conviction relief with alleged new evidence. (*Id*., PageID # 423.) Dinger alleged he obtained newly discovered evidence but would not be in possession of the evidence "until an expert investigator persues [sic] the issues to submit the petition itself" (*Id*.) This motion was denied by the trial court on October 27, 2022. (*Id*., PageID # 424-425.)

## E.      Federal Habeas Petition

On February 8, 2023,[2] Dinger, proceeding *pro se*, filed a Petition for Writ of Habeas Corpus in this Court and asserted the following grounds for relief:

**GROUND ONE**:  Violation of the United Sates Constiution [sic] and Ohio Constitution

> **Supporting Facts**: Appellant-Petitioner was denied effective assistance of trial counsel in violation of the Petitioners-Appellant [sic] United States Constitution rights to the VI and XIV Amendments As [sic] well as to the Ohio Constitution in Article 1, Section 10. Petitioner Appellant was allowed to proceed pro se and was appointed standby counsel who moved to withdraw as being unprepared even though counsel had a week to review the manifest injustice, nor was Petitioner-Appellant allowed to confront the prosecution witness or cross-examine the prosecution witnesses even though the Trial Judge refused to address the removal of appointed standby counsel as Petitioner-Appellant observed the unprofessionalism and uncooperative as well as combative in the defense of Petitioner-Appellant so appointed counsel was terminated as representative the pro se litigant [sic]. The Petitioner-Appellant was denied the fundamental right to a

---

[2]  Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities. *See Houston v. Lack*, 487 U.S. 266 (1988). The Court notes that Dinger listed the date his Petition was placed in the prison mailing system as February 10, 2023 (Doc. No. 1 at 13.) The timestamp of filing on his petition reflects February 8, 2023. Due to the inconsistency of filing dates, the Court will consider the petition as filed on February 8, 2023.

continuance as to the respect to any Legally Licensed Practicing Attorney [sic] in a trial proceeding.

**GROUND TWO**: Violation of Due Process Law

> **Supporting Facts**: The trial court violated the Petitioner-Appellant to self-representation as a pro-se litigant, and allowed ineffective assistance of standby counsel who in the [sic] own words had a week to review; examine; and prepare a collateral of the prosecution case yet standby appeared in the courtroom unprepared and unengaged and incompetent in the effective assistance of the Petitioner-Appellant and choose [sic] to have the trial court allow appointed counsel to withdraw. Then the trial [sic] refused to allow the pro se representative was barred from seeking a continuance and to cross-examine witnesses and provide witnesses for Petitioner own defense [sic]. The prosecutor failed produce [sic] any direct eye witness against the Petitioner-Appellant to corroborate or to warrant any indictment late alone [sic] sustain or a conviction against the manifest weight of the evidence or lack thereof when clearly the prosecution did not provide proof beyond a reasonable doubt.

**GROUND THREE**: The State failed to present sufficient evidence to sustain a conviction against the Petitioner-Appellant and the unjust conviction must be reversed.

**GROUND FOUR**: The jury fundamentally lost its way as Petitioner-Appellant conviction was against the manifestt weigth [sic] of the evidence.

> **Supporting Facts**: When there is sufficient evidence for the jury's consideration, typically issues such as credibility of a witness testimony and the weight to be assigned to the evidence before the court should be left to the providence of the jury. However, the appellate court may exercise its authority to review the entire record in determining whether the jury made a reasonable decision in reaching its verdict or whether the evidence heavily weighted [sic] against the conviction and the jury clearly lost its way, creating manifest injustice. In evaluating the weight of the evidence, the Court of Appeals assumes the seat of the "Thirteenth Juror," deciding whether the greater creditable [sic] evidence to support a conviction. While the appellate court may simply substitute its own judgment, its proper for the reviewing court to inquire whose evidence was more believable. In the instant case, the manifest weight against the conviction on the offenses charged. Restating and incorporating hereto those pertinent sections of the Ohio Revised Code, Petitioner-Appellant maintains the only witness presented in person, by the State at trial were Officer Barnhouse and Szainszlo. The alleged 911 caller who did not appear in person at trial nor did the alleged victim who refused to cooperate with the prosecutor's office in the charging indictment or provide a corroborating affidavit of truth to back up the hearsay testimony of both arresting officer's testimony on the

record and even though the prosecutor did subpoena the alleged victim and caller of the 911 call they did not use the call as a complete evidence of the charging indictment in which to sustain a just conviction against the manifest weight of the evidence or lack thereof.

**GROUND FIVE**: Violation of VI and XIV Amandment [sic] to the United States Constitution as well as the Ohio Constitution in Article 1, Section 10.

**Supporting Facts**: The violation of VI Amendment in the Petitioner-Appellant trial to confront the alleged victim accuser in open court were not given to Petitioner-Appellant as well as witnesses against the Petitioner-Appellant. The only allegations of the prosecutor's charging indictment came by the way of the arresting officer's hearsay testimony, video body camera footage of the arrest of the Petitioner-Appellant and a 911 recording by an alleged witness to whom prosecutor fail [sic] to produce either in a notarized sworn affidavit of truth or in person confrontation.

(Doc. No. 1.)

From February 23, 2023 to April 4, 2023, Dinger filed several motions with this Court, including a motion to order the record corrected of the official trial transcript and audio recordings (Doc. No. 5), a motion for leave to file a legal memorandum (Doc. No. 6), a motion to order grand jury transcripts (Doc. No. 7), another motion to order the recorded corrected of the transcripts (Doc. No. 9), a motion to take judicial notice of adjudicative facts (Doc. No. 13), a motion to compel Stark County Common Pleas and the Prosecutor's Office for the entire record and discovery of the case (Doc. No. 14), and a motion to grant an evidentiary hearing (Doc. No. 15.)

On April 11, 2023, this Court denied as moot Dinger's motion to order the record corrected of the official trial transcript and audio recordings (Doc. No. 5), and motion to take judicial notice of adjudicative facts (Doc. No. 13). The Court also denied Dinger's motion for an evidentiary hearing. (See Doc. No. 15.)

On May 31, 2023, Respondent filed briefs in opposition to Dinger's motion to order the record corrected of the transcripts (Doc. No. 9), motion to order grand jury transcripts (Doc. No. 7), and motion to compel discovery of Stark County Common Pleas and Prosecutor's Office for the entire record and discovery of the case. (Doc. No. 14). (See Doc. No. 20.) Dinger filed a response on June 13, 2023. (Doc.

No. 21.) On June 30, Dinger filed a motion to compel Stark County Clerk of Courts to overturn missing records (Doc. No. 23.) On July 5, 2023, Dinger filed a motion for extension to show cause as to why the petition should be granted (Doc. No. 24.) On July 11, 2023, this Court denied Dinger's motion to order grand jury transcripts (Doc. No. 7), motion to order record corrected of transcripts (Doc. No. 9), motion to compel Stark County Common Pleas and the Prosecutor's Office for the entire record and discovery of the case (Doc. No. 14), motion to compel Stark County Clerk of Courts to turn over missing records (Doc. No. 23), and motion for extension to show cause as to why petition should be granted (Doc. No. 24). (See Doc. No. 25.)

On June 16, 2023, Respondent filed a Return of Writ. (Doc. No. 22.) Dinger filed a Traverse on July 19, 2023 as well as a motion for appointment of counsel. (Doc. Nos. 27-28.) Respondent filed a Sur-Reply on July 25, 2023 (Doc. No. 29.) This Court denied Dinger's motion for appointment of counsel on October 26, 2023 (Doc No. 31.) On April 19, 2024, Dinger filed a motion to substitute the Respondent which was granted on May 9, 2024. (Doc. No. 33.)

### III.    Exhaustion and Procedural Default

**A.    Legal Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b)-(c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir.1990).

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97S.Ct. 2497, 53 L.Ed.2d 594 (1977)). A claim may

become procedurally defaulted in two ways. *Id.* First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.; see also Maupin v. Smith*, 785F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[3] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lovins*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.") This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id*. In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those

---

[3] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138–39; *Barkley v. Konteh*, 240 F. Supp.2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

claims could have been raised on direct appeal. *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal which could have been raised, the claim is procedurally defaulted. *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *Maupin*, 785 F.2d at 138–39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.* Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome

of the trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

A habeas court will not review procedurally defaulted claims unless the petitioner can establish both cause for the default and the actual prejudice from the alleged violation, or demonstrate that failure to consider the claims would lead to a fundamental miscarriage of justice. This includes situations where an appellate court failed to acknowledge a plain error. *See Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); "Controlling precedent in our circuit indicates that plain error review does not constitute a waiver of state procedural default rules.") In *Scott v. Mitchell*, 209 F.3d 854, (6th Cir. 2000), the Ohio Supreme Court rejected the contention that even with the finding of procedural default, plain error claims should be reviewed. They noted "that to apply the same 'plain error' review to a habeas petition that would apply on direct appeal destroys any respect for the finality of the state court judgment and allows the petition to function as a second appeal." *Id.* at 872.

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman v. Thompson*, 501 U.S.722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).  Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).  *See also Jones v. Bradshaw*, 489 F. Supp.2d 786, 807 (N.D. Ohio 2007); *Allen v. Harry*, 2012 WL 3711552 at * 7 (6th Cir. Aug. 29, 2012).

**B.** **Application to Petitioner**

     **1)** **Ground One and Two (in part), and Ground Five**

This Court recognizes portions of Dinger's claims for relief under Grounds One and Two, as well as all of Ground Five, contain overlapping, if not identical, supporting facts and claims. The Court will address each argument in turn.

Under his First Ground for relief, Dinger asserts, in part, he was not "allowed to confront prosecution witness [sic] or cross-examine the prosecution witnesses…" (Doc. No. 1 at 4.)  Under his Second Ground, in part, he states "the trial [sic] refused to allow the pro se representative…to cross-examine witnesses and provide witnesses for Petitioner [sic] own defense. The prosecutor failed [sic] produce any direct eyewitness against the Petitioner-Appellant to corroborate or to warrant any indictment…" (*Id.* at 5-6.) Under the Fifth Ground, he alleges his Sixth Amendment rights were violated as the rights to "confront the alleged victim accuser in open court were not given to Petitioner-Appellant as well as witnesses against the Petitioner-Appellant." (*Id.* at 9.) These claims are substantively the same and pertain to Dinger's assertion that his Sixth Amendment right to confrontation was violated.

Respondent asserts this argument is procedurally defaulted due to Dinger's failure to present it to the appellate court. (Doc. No. 22 at 13.) Dinger first raised this claim in his post-conviction petition, which was denied due to untimely filing. (Doc. No. 22-1, PageID # 399-401.)

In his Traverse, Dinger does not directly respond to the suggestion of procedural default. Rather, he reaffirms he was told he has "no right to face his accusers." (Doc. No. 27 at 23.) He asserts his inability to confront his accusers caused him a manifest miscarriage of justice so much that the jury fundamentally lost its way, due to a "reasonable probability" the outcome would have been different if Dinger had been permitted to confront and cross examine the alleged victim or accusers (*Id.* at 27.)

14

The Court finds this argument is procedurally defaulted. A review of the record confirms Dinger failed to raise this argument at the appellate level. (Doc. No 22-1, PageID # 241-276.) While Dinger attempted to raise it before the Supreme Court of Ohio, "under Ohio law, a constitutional question cannot ordinarily be raised before the Ohio Supreme Court unless it was first presented to the intermediate appellate court." *Reed v. Jenkins*, Case No. 3:15-cv-00620, 2016 WL 6311235, at *6 (N.D. Ohio June 22, 2016) (citations omitted), *report and recommendation adopted by* 2016 WL 6393350 (N.D. Ohio Oct. 27, 2016). As the Sixth Circuit has explained, "'The Ohio Supreme Court has stated that it will not consider constitutional claims not raised and preserved in the Ohio Court of Appeals.'" *Leroy v. Marshall*, 757 F.2d 94, 99 (6th Cir. 1985) (quoting *Fornash v. Marshall,* 686 F.2d 1179, 1185 n.7 (6th Cir.1982) (additional internal citations omitted).

In the present matter, the Ohio Supreme Court declined to accept jurisdiction of Dinger's appeal. (Doc. No. 2201, PageID # 389.) Dinger then attempted to raise the claim in his petition to vacate his conviction, but it was ruled untimely and therefore dismissed. (*Id*., PageID # 399-401.)

When a petitioner can no longer seek state court remedies due to untimely filing, procedural default, rather than exhaustion, prevents federal court review. *Engle,* 456 U.S. at 125 n.28. Where state court remedies are no longer available because a petitioner failed to utilize them within the statutory timeframe, procedural default bars federal court review. *Id*. Under Ohio law, a petitioner may not raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal, that claim is procedurally defaulted. *Id.* Because Dinger failed to raise this claim on direct appeal, the Court recommends these portions of Grounds One and Two, as well as Ground Five in its entirety, be procedurally defaulted.

15

a.      **Cause and Prejudice**

Dinger may obtain a merits review of this claim if he can demonstrate cause for the default and prejudice resulting therefrom, or that failure to review the claim would result in a fundamental miscarriage of justice. *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. 107 (1982); *Wainwright v. Sykes,* 433 U.S. 72 (1977); *United States v. Frady,* 456 U.S. 152, 168 (1982).

"A showing of cause requires more than the mere proffer of an excuse." *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006.) A procedural default cannot be excused on the grounds of a petitioner's self-representation, lack of legal knowledge, or lack of awareness of procedural rules. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir.), *cert. denied*, 543 U.S. 989 (2004). Instead, in order to establish cause, a petitioner "must present a substantial reason that is external to himself and cannot be fairly attributed to him." *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007), *cert. denied sub nom. Hartman v. Bobby*, 554 U.S. 924 (2008).

As noted above, Dinger did not raise a Sixth Amendment Confrontation Clause claim on direct appeal. He did raise it in his petition for postconviction relief, but that was dismissed due to untimely filing. In his application to reopen his appeal under Ohio App. R. 26(B), Dinger argued his appellate counsel was ineffective for failing to raise a Sixth Amendment claim.[4] (Doc. No. 22-1, PageID # 402-414.) As another district court within this Circuit has explained:

> [U]nder Ohio law, an application for reopening pursuant to App. R. 26(B), or a "Murnahan" motion, is a procedural mechanism for raising claims of appellate counsel ineffectiveness, not for bootstrapping underlying constitutional claims that were omitted from the direct appeal in the first place. Fair presentment requires a petitioner to present his claims to the state courts in a procedure and manner that will provide the state courts with the opportunity to apply controlling legal principles. *Picard v. Connor*, 404 U.S. 270, 276–77, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). To the extent petitioner is suggesting that raising a claim in a Rule 26(B) application is equivalent to raising that claim on direct appeal, he is in error. The notion that any constitutional claim raised in an application for reopening is fairly

---

[4] Dinger raises an ineffective assistance of trial counsel claim, but not for appellate counsel, in his habeas petition.

> presented to the state courts in the same manner as if that claim had been
> raised in a timely direct appeal is untenable and unsupported by case law.
> The only claims that can be preserved in a Rule 26(B) application for
> reopening, therefore, are claims of ineffective assistance of appellate
> counsel.

*Stojetz v. Ishee*, 389 F. Supp. 2d 858, 898–99 (S.D. Ohio 2005).  *See also Wogenstahl v. Mitchell*, 668 F.3d 307, 343 (6th Cir. 2012); *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005); *Enyart v. Coleman*, 29 F. Supp. 3d 1059, 1098 (N.D. Ohio 2014); *White v. Shewalter*, Case No. 1:10CV1265, 2012 WL 2711463, at *10 (N.D. Ohio March 14, 2012), *report and recommendation adopted by* 2012 WL 2741551 (July 9, 2012).

The Sixth Circuit has held that cause to excuse the procedural default of a habeas claim may exist if a petitioner's appellate counsel was ineffective in failing to raise the issue.  *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013); *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004); *Smith v. Ohio, Department of Rehab. and Corr.*, 463 F.3d 426, 432 (6th Cir. 2006); *Berry v. Warden, Southern Ohio Correctional Facility*, Case No. 3:14CV2518, 2016 WL 4177174, at *3 (N.D. Ohio Aug. 8, 2016). In Dinger's 26(B) Application, he alleges appellate counsel failed to raise this issue on direct appeal. In turn, the State claims appellate counsel was not deficient for declining to argue Dinger's assertions about his rights under the Confrontation Clause. (Doc. No. 22-1, PageID # 415-420.) The state appellate court denied Dinger's Application as untimely. (Doc. No. 22-1, PageID # 421-422.) Dinger failed to show good cause why he filed a late application, nor did he appeal the dismissal. "As a result, we must affirm the district court's judgment that [Petitioner] procedurally defaulted his ineffective-assistance-of-appellate-counsel claim and the underlying substantive claims by not timely filing a Rule 26(B) application and that he has not established cause to excuse this default." *McClain v. Kelly*, 631 Fed. Appx. 422, 427. Therefore, as his ineffective assistance of appellate counsel claim is procedurally defaulted due to the belated filing, it cannot serve as cause for excusing the procedural default of his underlying Confrontation Clause claim.

As Dinger fails to show cause, the Court need not consider the prejudice prong. *Smith v. Murray*, 477 U.S. at 533-34.

### b.      Actual Innocence

As noted *supra*, a petitioner's procedural default may be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman*, 501 U.S. at 749–50.  In order to establish actual innocence, a habeas petitioner must show "factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623 (1998). Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."  *Schlup*, 513 U.S. at 324.  *See also Jones*, 489 F. Supp. 2d at 807; *Allen*, 2012 WL 3711552, at *7.  A petitioner must show that, in light of new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. *Schlup*, 513 U.S. at 327.  "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Id*. at 316.

### i.      Witness Testimony

In his Traverse, Dinger claims to possess "newly discovered fresh evidence" which is comprised of testimony by an alleged witness, X.B. (Doc. No. 27 at 21.) X.B. was allegedly interviewed eight days prior to trial. (*Id*.) According to Dinger, X.B. saw Dinger and the victim engaged in an argument as they exited Dinger's vehicle, after which Dinger entered his apartment complex and closed the door. (*Id.* at 21-22.) The victim attempted to force entry into the apartment by pushing on the door while Dinger yelled at her to leave. (*Id*.) This testimony, Dinger claims, is exculpatory in nature and he was prohibited from presenting it in trial. (*Id*.)

Upon review of the record, this Court finds Dinger's evidence is not new. During a pretrial on October 29, 2020, Dinger inquired about X.B. presenting as a witness:

THE DEFENDANT: Okay. My other question is Xavier Bullock, who called him for a witness and has his criminal background, who introduced that?

THE COURT: The State of Ohio has him as a potential witness. That's what he was just telling you if you had been listening.

THE DEFENDANT: But what I'm saying is, how did he get him as a witness when I referred him to my attorney as a witness for me, how did he get his information as to that?

THE COURT: I have no idea how he got it.

THE DEFENDANT: Because he came from my attorney with text messages saying what he seen, her push her way into my home.

THE COURT: Okay. That will come out at trial, you'll have a right to cross-examine him, you can call him as your witness if you want, if you subpoena him. But the State of Ohio has put you on notice that they may call him as a witness in their case, that's all they're required to do.

THE DEFENDANT: Well, there's no subpoena sent out for him so I'll do that.

MR. NICODEMO: That's fine.

THE COURT: You're entitled, you can subpoena him if you want.

THE DEFENDANT: I'm going to because he's a disinterested witness. He lives in the apartment above me and seen us go into the house, that she left on her own and pushed her way into my house.

(Doc. No. 22-2, PageID # 597-598.)

At a pretrial on October 30, 2020, Dinger affirmatively stated he wanted a different individual subpoenaed "and that's it, nobody else." (*Id.*, PageID # 620.) At trial, Dinger attempted to enter X.B.'s statement. The trial court denied his request, noting, "[O]kay. No. I don't want you to say anything further. If you haven't subpoenaed him, and he's not here, and not available, you know – that was your responsibility to subpoena him." (*Id.*, PageID # 756-757.) He later inquired why the prosecutor failed to present the testimony from X.B. (*Id.*, PageID # 1278-1279.) He was reminded he cannot comment on

evidence that is not on testimony or statements not in evidence, and that he never subpoenaed the witness. (*Id.*)

The record reflects X.B.'s testimony was known prior to trial. Dinger was reminded multiple times to subpoena witnesses if he intended to (See Doc. No. 22-2, PageID # 561, where Dinger is informed "[Y]ou need to let that person know the names and addresses of any witnesses, you need to prepare your subpoenas and give them to them so that they can file their subpoenas.") Therefore, Dinger has failed to demonstrate the procedural default of this issue should be excused on the basis of new evidence.

### ii.  Victim Letter

The Court also recognizes the receipt of a letter purportedly from the victim. (Doc. No. 29.) Although the hand-written letter is not notarized, it claims Dinger never took the victim against her will nor threatened her in any manner. (*Id.*) This Court is uncertain as to why the author failed to present this statement during any state court proceeding, or why Dinger failed to bring this letter to the Court's attention. Nevertheless, federal habeas claims cannot resolve actual innocence claims founded upon newly discovered evidence. *Welly v. Ohio*, N.D. Ohio No. 3:17-CV-0600, 2018 WL 6702902, *6, *report and recommendation adopted,* No. 3:17CV6002018 WL 6696987; *see also Herrara v. Collins*, 506 U.S. 400-401, 113, S.Ct. 853, 122 L.E.2d 203 (1993); *Moore v. Dempsey*, 261 U.S. 86, 87-88, 67 L.Ed. 543, 43 S. Ct.265 (1923); *Hyde v. Shine*, 199 U.S. 62, 84, 50 L.Ed.90, 25 S.Ct. 760 (1905). The Sixth Circuit has held that in habeas cases, a claim of innocence can be used to excuse procedural defaults, but it cannot be presented as an independent claim. *Write v. Stegall*, 274 Fed.Appx. 707, 711. Here, Dinger has not attempted to excuse his procedural default in relation to this new alleged evidence that was submitted.

Assuming, *arguendo*, this letter did somehow excuse Dinger's procedural default, a habeas petition in this Court is not the proper avenue by which to attempt demonstrated innocence. "A claim of actual innocence based upon newly discovered evidence is not grounds for federal habeas relief." *Hence v. Smith*,

37 F.Supp.2d 970, 980 (E.D.Mich.1999). In the federal courts that have considered granting habeas relief upon newly discovered evidence, the petitioner bears the burden of "an extraordinary showing" of innocence before habeas can be granted. *Monroe v. Smith*, 197 F.Supp.2d 753, 763 (E.D.Mich.2001), aff'd 41 Fed.Appx. 730. In *White v. Keane*, 51 F.Supp.2d 495, 502-503 (S.D.N.Y.1999), the federal court indicated that newly discovered evidence must be "so compelling" that it would violate the fundamental fairness of the Due Process Clause. *See also Alleyn v. Warden*, 878 F.Supp. 30, 31 (M.D.Pa.1995) (to be granted habeas relief on the basis of newly discovered evidence, the petitioner must make a "truly persuasive demonstration of innocence.") To make such demonstration, Dinger would need to show "1) the evidence was discovered after trial; 2) the evidence could not have been discovered without due diligence; 3) the evidence is material and not merely cumulative or impeaching; and 4) the evidence would likely produce an acquittal if the case were retried." *United States v. Turns*, 198 F.3d at 586-587. Throughout his pleadings, Dinger fails to mention the letter, let alone provide a persuasive or compelling demonstration that he is innocent or suggest it would produce an acquittal.

As such, the Court finds the portions of Dinger's First and Second, as well as the entirety of his Fifth Grounds for relief, which pertain to the Dinger's ability to confront his accusers and/or cross-examine them or his own witnesses, are procedurally defaulted, and not excused for any reason. The Court recommends these claims be denied.

### IV. Non-cognizable Claims

**A.      Ground Four and Ground Two**

In his Fourth Ground, as well as in a portion of his Second Ground, Dinger asserts the jury "fundamentally lost its way," as the prosecution failed to produce direct eye-witnesses thus his convictions are against the manifest weight of the evidence. (Doc. No. 1 at 6, 8.) He argues the state failed to prove each element of the crimes beyond a reasonable doubt. (*Id.*) Dinger notes the only witnesses presented in

person by the prosecutor were two police officers. (*Id*.) He asserts the prosecutor did subpoena the alleged victim and 911 caller, but both failed to cooperate or provide a corroborating affidavit of truth to back up the hearsay testimony of the arresting officers. (*Id*.) He further alleges the prosecutor did not use the 911 call s support for the charging indictment. (*Id*.) Respondent asserts a manifest weight of the evidence claim fails to address a federal Constitutional claim, therefore Dinger's Fourth Ground, and part of his Second, are not cognizable. (*Id*.)

In response, Dinger alleges there is a "reasonable probability" the outcome would have been different had Dinger been permitted to confront and cross-examine the alleged victim, as well as witnesses. (Doc. No. 27 at 27.) He further raises the new allegation there never was a "lesser included offense" given for jury instructions to consider on when a lesser included offense is required only where the evidence would reasonably support both an acquittal and a conviction upon the lesser included offense. (*Id.* at 33.) The Respondent disagreed in his Sur-Reply, pointing out this claim has not been previously raised until now and claiming that all grounds must be raised in the habeas petition, not in a traverse. (Doc. No. 30 at 2.) The Court will address each of Dinger's claims below.

It is well-established manifest weight of the evidence claims are not cognizable on federal habeas review. *See, e.g., Nash v. Eberlin*, 437 F.3d 519, 524 (6th Cir. 2006); *accord Howard v. Tibbals*, No. 1:12 CV 1661, 2014 WL 201481, at *16 (N.D. Ohio Jan. 17, 2014); *Hess v. Eberlin*, No. 2:04-cv-1144, 2006 WL 2090093, at *6 (S.D. Ohio Jan. 17, 2006). *See also Gibson v. Miller*, 5:15CV119, 2016 WL 6277229, at *1 (N.D. Ohio Oct. 27, 2016) ("[C]ontentions that a conviction is contrary to the manifest weight of the evidence also do not raise cognizable claims."). To review a manifest weight of the evidence claim, the appellate court acts as a 'thirteenth juror' by reviewing the record, assessing the evidence, and assessing the credibility of witnesses to decide if the jury's decision was so flawed "and created such a manifest miscarriage of justice" that the conviction must be reversed a new trial is necessary.

*Hess,* 2006 WL 2090093, at *7 (quoting *State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (Ohio Ct. App. 1983.))

This Court cannot consider whether Dinger's convictions were against the manifest weight of the evidence. Therefore, it is recommended the Court find that Dinger's Fourth Ground to be non-cognizable on habeas review.

**B.      Lesser Included Offense Argument Raised for the First Time in the Traverse**

In Dinger's Traverse, he raises the argument for the first time there was never a "lesser included offense" instruction given for the jury to consider. (Doc. No. 27 at 33.) Because this argument is first presented in Dinger's traverse rather than his habeas petition, it is not properly before this Court and therefore this Court declines to address it. See *Jenkins v. Welch*, No. 4:09CV637, 2010 WL 1948297, at *15 (N.D.Ohio Apr.26, 2010); *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005), cert. denied, 547 U.S. 1074, 126 S.Ct. 1774, 164 L.Ed.2d.523 (2006) ("Because the penalty-phase insufficiency argument was first presented in Tyler's traverse rather than his habeas petition, it was not properly before the district court, and the district court did not err in declining to address it."); *Sowell v. Collins*, 557 F.Supp.2d 843, 889 (S.D.Ohio.2008), aff'd, 663 F.3d 783 (6th Cir.2011) ("Because this petitioner has not raised this part of his third argument previously, and instead presented this allegation for the first time in his supplemental merits brief, it is not properly before the Court for a consideration on the merits."); *Palmer v. Bagley*, 2005 WL 3965400 (S.D.Ohio, Dec. 16, 2005). Because this claim was not raised before this Court in Dinger's petition, it is not cognizable on appeal. *King v. Rowland*, 977 F.2d 1354, (9th Cir. 1992).

## V.  Review on the Merits

**A.      Legal Standard**

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings (as opposed to the dicta) of the United States Supreme Court. *See Parker v. Matthews*, 567 U.S. 37, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012); *Renico v Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Shimel v. Warren,* 838 F.3d 685, 695 (6th Cir. 2016); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir.2005).  Indeed, the Supreme Court has indicated that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court."  *Parker*, 567 U.S. at 48-49; *Howes v. Walker*, 567 U.S. 901, 132 S.Ct. 2741, 183 L.Ed.2d 612 (2012).  *See also Lopez v. Smith*, ⸺ U.S. ⸺, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.'" (quoting *Marshall v. Rodgers*, 569 U.S. 58, 133 S.Ct.1446, 1450, 185 L.Ed.2d 540 (2013)).

24

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id. See also Shimel*, 838 F.3d at 695.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor,* 529 U.S. at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fair-minded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA. *Id.* at 786 (internal quotation marks omitted).  The Court admonished that a reviewing court may not "treat the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 785.  The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id.* (internal quotation marks omitted). Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded

25

disagreement." *Id.* at 786–87.  This is a very high standard, which the Supreme Court readily acknowledged. *See Id.* at 786; ("If this standard is difficult to meet, that is because it is meant to be.")

**B.  Application to Petitioner**

**1)  Grounds One (in part) and Two (in part)**

In the other portion of Dinger's Grounds One and Two currently before this Court, he contends he received ineffective assistance from standby counsel when the trial court permitted standby counsel to withdraw, and subsequently denied his request for a continuance during the proceedings. (Doc. No. 1 at 4, 5.) He further asserts the court infringed upon his right to self-represent as a *pro se* litigant by allowing him to proceed and then allowing his standby counsel to withdraw. (*Id.*)

Respondent argues the state appellate court reasonably affirmed Dinger's convictions, ruling that standby counsel's performance did not violate Dinger's right to effective assistance of counsel, nor did the trial court abuse its discretion in denying Dinger's motion for a continuance. (Doc. No. 22 at 21.)

In his Traverse, Dinger responds the trial court had a duty to uphold Dinger's rights when inquiring into his waiver of counsel. (Doc. No. 27 at 2.) He asserts the trial court's utilization of a *Faretta* Inquiry demonstrated his "extreme lack of legalese knowledge regarding rules and procedures in a court of law" and he had "absolutely no understanding of the consequences in the dangers that self-representation would lie ahead if he were to proceed to trial as a pro se litigant." (*Id.* at 3.) Further, Attorney A. Ruhl, who was appointed as his standby counsel, moved to withdraw due to lack of time for preparation. (*Id.* at 8.) Dinger claims this forced his hand in proceeding *pro se* and without the benefit of counsel. (*Id.*)  However, the record reflects that Dinger had an opportunity to speak privately with Attorney Ruhl about his representation, yet still decided to continue *pro se*:

> MS. RUHL:    Okay, Your Honor. And so, just for clarification. I have not had an opportunity to converse with him in any attorney-client relationship at all. And so, I have not yet had any opportunity to discuss with him any trial strategy or anything

26

moving forward at this time. That's why I have to stress to the Court that a continuance would be necessary, in order, to prohibit an ineffective assistance of counsel argument moving forward. I haven't had no chance to converse with him as his lawyer.

THE COURT: Okay. But you have had access to all the discovery; is that correct?

MS. RUHL: That is correct, Your Honor. But I do believe that it is important that he has the ability to assist me in his defense. And let me know what certain things are, that he would want presented and different ideas and strategies that we would talk about if we had a normal attorney-client relationship.

THE COURT: Okay. How about if we take a recess until 1:00, and that gives you over the lunch hour to converse with your client now that he has accepted your representation. And we'll begin at 1:00 this afternoon.

MS. RUHL: And, Your Honor, and so, if there's further disagreement arises between the representation that plan to present and what he has, can I bring it to the Court's attention—

THE COURT:  Absolutely.

MS. RUHL:    -- at that time.

THE COURT:  Absolutely.

MS. RUHL:    Thank you.

THE COURT:  Okay. Very well. Okay. We're going to take a recess until 1:00.

(Doc. No. 22-2, PageID # 941-942.)

THE COURT: Let the record reflect, that we're back on the record on the State of – in the State of Ohio versus Christopher Dinger. Mr. Dinger is present in the courtroom. And I don't know if Ms. Ruhl is representing him or not at this time. Before the break – and, well – let the record reflect Mr. Nicodemo is here. Before the break, Mr. Dinger had indicated that he did want Ms. Ruhl to represent him. And I had made some

27

preliminary rulings. And by the way, I did pull the case on hybrid representation.

MS. RUHL:    Uh-huh.

THE COURT: And just so you know, the hybrid representation refers to where the defendant and counsel act as co-counsel sharing responsibilities and conducting the trial. In this case, I don't view this as a hybrid representation. This is -- this is either pro se representation or representation. But with that being said, I've heard through the grapevine that now Mr. Dinger might be reverting back to wanting to represent himself; is that correct, Mr. Dinger?

MR. DINGER: Yes, Your Honor.

THE COURT: Okay. And so, we will proceed with Mr. Dinger representing himself.

MR. DINGER: Would you like me –

MS. RUHL:    And, Your Honor – I'm so sorry. I just want to put on the record, I did inquire him several times about his intention to continue with his pro se representation. And so, I just wanted to make that clear for the record.

THE COURT: Okay. But, Ms. Ruhl, you will remain as standby counsel throughout the remainder of the proceedings in case he changes his mind. And I normally would not do this. But, in order, to hopefully expedite these proceedings. I'm going to make some suggestions to you, Mr. Dinger.

MS. RUHL:    And, Your Honor, just so the Court is aware, before he released me as counsel, I did have the opportunity to converse with him at length about some procedural matters that I believe would be extremely helpful for him to move forward. You could inquire him directly. But I would just state for the record that I did have the opportunity, while that short time, while I was acting as his counsel, to tell him a few things, a few points here for moving forward in terms of introducing evidence, the proper impeachment of witnesses, and just some – some pointers. And so, I think that he really has a much better grasp now, hopefully. And anything with the Court would want to –

> THE COURT: Well, I – I – the only reason that I'm allowing him to proceed is because none of this happened in front of the jury. But you need to understand, you can't tap in and tap out. This isn't like a little wrestling match here. If you go forward. If – if you chose to have her represent you, that's it. Do you understand?

> MR. DINGER: Yes, Your Honor.

(Doc. No. 22-2, PageID # 944-947.)

In a Sur-Reply, Respondent asserts Dinger consistently opted to represent himself throughout the entire trial. (Doc. No. 30 at 4.) Respondent also highlights that leading up to, and during trial, the trial court actively discouraged Dinger from proceeding *pro se*, yet he affirmatively and knowingly persisted with this choice. (*Id.* at 5.) Therefore, Dinger now cannot claim he misunderstood the nature and risks associated with self-representation. (*Id.*)

The record reflects Dinger raised this ineffective assistance of counsel claim to both the state appellate court and the Supreme Court of Ohio. (Doc. No. 22, Ex. 22, 29.) The state appellate court considered these claims on the merits and rejected it as follows:

> {¶10} In his first assignment of error, Appellant argues standby counsel was ineffective because she was not prepared to proceed as lead counsel during trial.

> {¶11} The following colloquy occurred during a recess, called by the court during Appellant's cross-examination of the State's first witness:

>> THE COURT: Mr. Dinger, is there something you wish to bring to the attention of the Court?

>> MR. DINGER: Yes. I would like Angel Ruhl to step in.

>> THE COURT: Ok. Ms. Ruhl?

>> MS. RUHL: Your Honor, at this time, I would have to ask the Court for permission to withdraw. I was just appointed on this case about a week ago, and I've had limited opportunity to converse with my client then regarding these matters. And so, that would be my first motion to the Court.

THE COURT: And that would be overruled.

{¶12} Tr. II, 11-12.

{¶13} After standby counsel's motion to continue the case was overruled, the trial court gave Appellant and standby counsel an opportunity to discuss the case and how to proceed, after which Appellant expressed his desire to continue representing himself.

{¶14} A properly licensed attorney is presumed competent. *State v. Hemblin*, 37 Ohio, St.3d, 153, 524 N.E.2d 476 (1988). Therefore, in order to prevail on a claim of ineffective assistance of counsel, Appellant must show counsel's performance fell below an objective standard of reasonable representation and but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1986); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). In other words, Appellant must show counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. Id.

{¶15} "In Ohio, a criminal defendant has the right to representation by counsel or to proceed pro se with the assistance of standby counsel." *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, paragraph one of the syllabus. Standby counsel serves as an important resource for pro se defendants by assisting them to navigate "the basic rules of courtroom protocol" and to "overcome routine obstacles that stand in the way of the defendant's achievement of his own clearly indicated goals." *McKaskie v. Wiggins*, 465, U.S. 168,184, 104 S.Ct. 944, 79, L.Ed.2d 122 (1984). While hybrid representation is prohibited standby counsel is appointed to attend the trial and answer the defendant's questions regarding courtroom procedure. *State v. Owens*, 3d Dist. Allen No. 1-07-66, 2008-Ohio-4161, 2008 WL 3822608, ¶ 26.

{¶16} In a case where a similar claim of ineffective assistance of standby counsel for lack of preparation was raised, the Tenth District Court of Appeals held a defendant cannot raise a claim of ineffective assistance of standby counsel on appeal:

Appellant additionally contends that his standby counsel was ineffective because he was not familiar with appellant's case. Here, appellant elected to exercise his right of self-representation. In Ohio, "a criminal defendant has the right to representation by counsel or to proceed pro se with the assistance of standby counsel," but "these two rights are independent of each other and may not be asserted simultaneously." *State v. Martin*, 103 Ohio St. 3d, 385, 2004-Ohio-5471, 816 N.E.2d 227, ¶ 32.

Thus, appellant cannot complain that he failed to receive effective assistance of counsel because "he has no corresponding right to act as co-counsel on his own behalf." *State v. Thompson*, 33 Ohio St.3d, 1, 6-7 514 N.E.2d 407 (1967). Further, appellant points to nothing in the record to suggest that his standby counsel rendered ineffective assistance, or that he was prejudiced by such deficient assistance. Therefore, we find appellant's arguments regarding the effectiveness of his standby counsel to be without merit.

{¶17} *State v. Hillman*, 10th Dist. No. 14-AP-252, 2014-Ohio-5760, 26 N.E.3d 1236, ¶ 58.

{¶18} Appellant argues in the instant case, at the point in the trial when he asked Ms. Ruhl to step in, she was appointed as counsel, and no longer standby counsel. We disagree. It is not clear from the record what Appellant desired Ms. Ruhl to do at this point: take over as his counsel, or step in on the cross-examination of the witness, which would be prohibited hybrid representation. While the trial court acknowledged Appellant's apparent decision to proceed with counsel taking over, the trial court did not appoint Ms. Ruhl as lead counsel of record. Further, the record does not reflect Appellant revoked his right to self-representation, which he had validly waived before trial. After a recess to converse with Ms. Ruhl, Appellant indicated he desired to continue to proceed pro se, and Ms. Ruhl at no point acted in the role of lead counsel for Appellant in the conduct of the trial. We therefore find Appellant cannot raise a claim of ineffective assistance of counsel because there is no right to hybrid counsel and Appellant cannot assert his own ineffectiveness as counsel. Hillman, supra.

To establish ineffective assistance of counsel, a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A petitioner also must demonstrate that a trial counsel's performance prejudiced the petitioner's defense to such an extent that it rendered the proceeding unfair. *Id.* To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from

31

the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). As explained

by the United States Supreme Court:

> Establishing that a state court's application of *Strickland* was unreasonable
> under § 2254(d) is all the more difficult. The standards created by
> *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 466 U.S.
> 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Lindh v. Murphy*, 521 U.S. 320, 333,
> n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in
> tandem, review is "doubly" so, *Knowles*, 556 U.S., at ——, 129 S.Ct. 1411,
> 173 L.Ed.2d 251. The *Strickland* standard is a general one, so the range of
> reasonable applications is substantial. 556 U.S., at ——, 129 S.Ct. 1411,
> 173 L.Ed.2d 251. Federal habeas courts must guard against the danger of
> equating unreasonableness under *Strickland* with unreasonableness under §
> 2254(d). When § 2254(d) applies, the question is not whether counsel's
> actions were reasonable. The question is whether there is any reasonable
> argument that counsel satisfied *Strickland* 's deferential standard.

*Harrington*, 562 U.S. at105. *See also Kennedy v. Warren*, 428 F. App'x 517, 520 (6th Cir. 2011); *Phillips*

*v. Sheldon*, 2014 WL 185777, at **14-15 (N.D. Ohio Jan. 16, 2014).

Dinger asserts Attorney Ruhl was unprepared despite having a week to review the case. (Doc. No.

1 at 4.) He claims he "had no choice at all" when deciding whether to proceed *pro se* or with Attorney Ruhl.

(Doc. No. 27 at 7.) [5]

In his Traverse, Dinger references *James. v. Brigano*, 470 F.3d 636 (6th Cir. 2006) as a comparable

case whereas appointed counsel sought to withdraw after informing the court he could not properly represent

---

[5] The trial court denied Attorney Ruhl's motion to withdraw despite her notification that she only had one week to prepare for the case. While "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," this Court is of the belief that one week is inadequate preparation time for a case of this complexity. Attorney Ruhl was compelled to continue as standby counsel, giving Dinger the option of proceeding with an unprepared attorney, or proceeding *pro se*. The record does not clarify whether Dinger sought Attorney Ruhl's full representation, relinquishing his right to proceed *pro se*, or mere assistance, which is forbidden as hybrid representation. Following a discussion with Attorney Ruhl, he opted for self-representation. While Dinger argues he was prejudiced by his standby counsel's unpreparedness and felt coerced into representing himself, this Court finds his decision to represent himself after holding a private discussion with Attorney Ruhl "clear and unequivocal," especially given Attorney Ruhl's comment that she spoke at length with Dinger about his decision to continue *pro se*. *Akins v. Easterling,* 648 F.3d 380, 397. The U.S. Supreme Court stresses the importance of thoroughly communicating the "warnings of the pitfalls of proceeding to trial without counsel," adding they must be "rigorously conveyed." *Iowa v. Tovar*, 541 U.S. 77, 89, 124 S.Ct. 1379, 1388. The record is replete with evidence indicative of the trial court's attempts to dissuade Dinger from self-representation, including discussion of the possible penalties and risks associated with his charges and potential difficulties he may face in court. Therefore, he waived his right to claim ineffective assistance of counsel.

the defendant. (*Id.*) There are several notable distinctions in *Brigano* that are not present here. In *Brigano*, the trial court omitted explanations of the risks and dangers of self-representation and failed to inquire as to the reason behind defendant's desire to terminate counsel. (*Id.* at 639.) In the present matter, the record indicates the trial court did provide an explanation of the risks associated with proceeding *pro se* and conducted inquiries into Dinger's decision to dismiss counsel. In *Brigano*, the court permitted the defendant to represent himself without making a specific finding that his waiver of counsel was knowing or intelligent; rather they believed he was employing delay tactics by firing appointed counsel. (*Id.* at 644.) Neither the state trial court nor appeals court addressed the issue of waiver. (*Id.*) In the present case, the trial court conducted a thorough hearing to ascertain whether Dinger was knowingly and intelligently waiving his right to counsel, with no indication that he was using dilatory tactics to delay. In *Brigano*, the record indicated the defendant's waiver of counsel was not made knowingly and voluntarily, diverging from United States Supreme Court precedent affirming that "a judge must thoroughly investigate the circumstances under which the waiver is made." *See Fowler v. Collins,* 253 F.3d 244, 249 (6th Cir.2001). In the present matter, the record indicates Dinger elected to represent himself knowingly and intelligently, including after a break in the proceedings where he was provided the opportunity to speak to Attorney Ruhl for still decided to continue *pro se*. (Doc No. 22-2, PageID # 940-947.)

During a pre-trial on September 29, 2020, when asked how Dinger could be prepared to go forward with trial *pro se* after terminating his prior two attorneys and filing grievances against them, he responded, "I've been, I've been preparing myself the whole six -- five months I've been here." (*Id.*, PageID # 469.) The record is well-supplied with examples whereas Dinger affirmed his intention to proceed *pro se* knowingly and intelligently despite repeated lines of questioning from the trial court. He was aware he would be bound by the same rules and evidentiary standards as any other attorney in court, and there were rules governing criminal proceedings. (*Id.*, PageID # 526, 528.) He indicated familiarity with the rules of

33

evidence and had been studying relevant legal materials. (*Id*., PageID #529.) He acknowledged the court would not admit evidence if he failed to submit it correctly. (*Id*., PageID # 530, 531.) He recognized the risks associated with introducing exhibits and his lack of legal expertise in formulating questions or examining witnesses. (*Id.*, PageID # 532.) He was aware that by representing himself he would waive the right to later claim ineffective or improper legal counsel (*Id.,* PageID # 533). He further understood the monetary fines and jail time penalties. (*Id.*, PageID # 544.)

Further, Dinger misquotes the trial transcript. Dinger asserts the trial court stated, "[F]rom my questioning of you today you dramatically don't know any rule of procedures, laws, or rules of evidence. You are NOT COMPETENT IN SHORT WORDS TO SELF-REPRESENT pro-se." (sic) (Doc. No. 27 at 4.) Rather, the trial court said, "[I]t is almost always unwise for a defendant on trial to try to represent themselves. You're not familiar with the law, you're not familiar with handling a trial, you're not familiar with court, procedures, you're not familiar with the rules of evidence or the rules of procedures. And my questioning of you today has borne that out quite dramatically. I would strongly urge you not to try to represent yourself. Do you understand my position on this issue?" to which Dinger replied, "[Y]es, your honor." (Doc. No. 22-2, PageID # 555.)

A review of the transcripts suggests a contrary stance to the basis of Dinger's claims. The trial court attempted to dissuade Dinger from self-representation. He was posed with numerous legal questions, and the risks and penalties of his charges were thoroughly explained. The trial court expressed apprehension regarding his insistence on proceeding *pro se*. The record suggests no indication that Dinger was incapable of self-representation. His decision was made freely and of his own volition. (*Id*., PageID # at 556-557.) Therefore, he cannot now reference the same record and claim ignorance.

This Court has held that the Sixth Amendment will not protect a *pro se* defendant from his own shortcomings. See *Holmes v. United States*, 281 F. App'x 475, 480-81 (6th Cir. 2008) ("Because [petitioner]

validly waived his right to counsel, his claim for ineffective assistance . . . fails. . . Even if standby counsel failed to act in some manner, such failure is an incidental effect of [petitioner's] decision to assert his Faretta rights, and not the basis of an ineffective assistance of counsel claim."). *United States v. Jerdine*, N.D.Ohio No. 1:08 CR 00481, 2009 U.S. Dist. LEXIS 117919, at *9-10 (Dec. 18, 2009). "[A] State may -- even over objection by the accused -- appoint a "standby counsel" to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." *Faretta,* 422 U.S. 806, 834 (1975), fn. 46.

Dinger never elected to terminate his self-representation. Even following a break to confer with his appointed counsel, he continued *pro se*. The Ohio Supreme Court has reaffirmed that a criminal defendant has the right to representation by counsel, *or* to proceed *pro se* with the assistance of counsel. (emphasis added) *State v. Martin*, 103 Ohio St.3d, 385, 2004-Ohio-5471, 816 N.E.2d 227, ¶ 32. Dinger may appear *pro se*, or have counsel, but not both. See *State v. Thompson,* (1987), 33 Ohio St.3d, 6-7, 514 N.E.2d 407. As such, "these two rights are independent of each other and may not be asserted simultaneously." *State v. Martin*, 103 Ohio St. 3d, 385, 2004-Ohio-5471, 816 N.E.2d 227, ¶ 32. Dinger's argument that standby counsel was not effective lacks merit. He opted to exercise the right to self-representation. Hence, he cannot argue that he was deprived of effective legal assistance.

### a.    Motion for Continuance

In Grounds One and Two, Dinger raises the argument he was denied the "fundamental right to a continuance as to the respect to any legally licensed practicing attorney in a trial proceeding." (Doc. No. 1 at 4.) As a prefatory matter, the decision to grant a motion for continuance is within the discretion of the trial judge. *Powell v. Collins*, 332 F.3d 376, 396. In the absence of evidentiary proof suggesting a constitutional violation, a habeas petitioner must demonstrate that a trial error was so severe that it deprived them of a fundamentally fair trial, thereby violating constitutional due process principles. *See Cooper v.*

*Sowders,* 837 F.2d 284, 286 (6th Cir.1988). A petitioner must also demonstrate that the denial caused actual harm to their defense, such as showing that additional time would have made relevant witnesses available, or otherwise benefited their defense. *See United States v. Moreno,* 933 F.2d 362, 372 (6th Cir.1991); *United States v. Martin,* 740 F.2d 1352, 1361 (6th Cir.1984). Courts consider several factors to determine whether a continuance was properly denied, such as "the length of the requested delay; whether other continuances had been requested and granted; the convenience or inconvenience to the parties, witnesses, counsel and the court; whether the delay was for legitimate reasons or whether it was 'dilatory, purposeful or contrived;' whether the defendant contributed to the circumstances giving rise to the request; whether denying the continuance will result in identifiable prejudice to defendant's case; and the complexity of the case." *United States v. Burton,* 584 F.2d 485, 490–91 (D.C.Cir.1978).

The state appellate court recognized Dinger's request to have standby counsel step in was made after a significant portion of the trial had been completed *pro se.* (Doc. No. 22-1, PageID # 311.) Jury selection, opening statements, and a substantial portion of questioning of the first of the two State witnesses were complete. (*Id.*) The state appellate court observed Dinger did not rescind his right to self-representation although the motion for a continuance came from standby counsel. (*Id.*) A review of the record fails to suggest what Dinger was hoping the continuance would achieve or how it might have impacted the trial's outcome. "[N]ot every denial of a request for more time ... violates due process," even if the party seeking a stay "is compelled to defend without counsel." *Gerber v. Veltri,* 702 Fed.Appx. 423, 428, quoting *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964). Dinger fails to demonstrate how the denial of a continuance was so egregious that he was deprived of a fundamentally fair trial and thus deprived of constitutional rights.

For the above reasons, this Court recommends Dinger's Grounds One and Two (in part) and Ground Five be denied.

**2)  Ground Three**

In his Third Ground, Dinger argues his convictions were unjust, as "the state failed to present sufficient evidence to sustain a conviction." (Doc. No. 1 at 7.) Dinger fails to accompany his claim with any specific supporting facts.

Respondent asserts there was sufficient evidence to sustain Dinger's conviction. (Doc. No. 22 at 30.) Citing testimony from the trial, Respondent asserts the conviction of kidnapping and menacing by stalking were reasonable findings by the jury. (*Id.* at 34-35.) Utilizing the *Jackson* standard, Respondent argues Dinger fails to demonstrate the state appellate court's "rejection of his sufficiency-of-the-evidence claim was contrary to United States Supreme Court precedent or based on an unreasonable determination of the facts in light of the evidence presented" and thus Dinger's Third Ground is meritless. (*Id.* at 35-36.) In his Traverse, Dinger reaffirms the State failed to present any sufficient evidence to sustain a conviction and cites several instances throughout the trial proceedings where the prosecution improperly admitted evidence, or the testifying police officers committed perjury.

Dinger raised a timely sufficiency of evidence claim to both the state appellate court and the Supreme Court of Ohio. (Doc. No. 22-1, Ex. 22, 29.) The state appellate court considered this claim on the merits and rejected it as follows:

> {¶20} In his second and third assignments of error, Appellant argues the judgments of conviction are not supported by sufficient evidence, and are against the manifest weight of the evidence.
>
> {¶21} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, 78 Ohio St. 3d, 380, 387, 1997-Ohio-52, 678 N.E.2d 541, quoting State v. Martin, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

{¶22} An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks, 61 Ohio. St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

{¶23} Appellant was convicted of kidnapping in violation of R.C. 2905.01(A)(3):

(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:

(3)    To terrorize, or to inflict serious physical harm on the victim or another[.]

{¶24} The State presented evidence through the testimony of police officers investigating the case [sic] Appellant want to the home of M.D., pushed his way past M.D., into the home, wrapped K.L., in a blanket, threw K.L., over his shoulder, put her in his car, and drove her to his apartment. After police breached the door with a battering ram and apprehended Appellant, K.L. came out of the bedroom. K.L. appeared disheveled, distraught, and upset. She later indicated to police she could not call out to police when they knocked on the door because Appellant held her down, with a pillow over her face. Police located K.L.'s cell phone on Appellant's person. We find this is sufficient evidence if believed by the jury to convict Appellant of kidnapping, and we further find the verdict is not against the weight of the evidence.

{¶25} Appellant was also convicted of menacing by stalking in violation of R.C. 2903.211(A)(1):

(A)(1): No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person. In addition to any other basis for the other person's belief that the offender will cause physical harm to the other person or the other person's family or household member or mental distress to the other person or the other person's family or household member, the

other person's belief or mental distress may be based on words or conduct of the offender that are directed at or identify a corporation, association, or organization that employs the other person or to which the other person belongs.

{¶26} The State presented testimony from the investigating officers [sic] Appellant had been following K.L. and her friend M.D. Appellant admitted on cross-examination he went to K.L.'s apartment uninvited at 4:00 a.m. in the morning. A neighbor of K.L. told police she observed an incident where Appellant pounded on K.L.'s door while K.L. screamed at him to leave her alone or she would call police. Because of problems with Appellant, K.L. and her sister B.L. had a pact here K.L. would stay in contact with B.L. by texting or calling every hour on the hour. We find this sufficient evidence to support the conviction of menacing by stalking, and we find the judgment is not against the manifest weight of the evidence.

{¶27} The second and third assignments of error are overruled.

*State v. Dinger,* 5th Dist. Stark No. 2020 CA 177, ¶¶ 20-27; 2022-Ohio-608 (Mar. 2, 2022.)

The Due Process Clause of the Fourteenth Amendment requires that a criminal conviction be supported by proof beyond a reasonable doubt with respect to every fact necessary to constitute the offense charged. *In re Winship*, 397 U.S. 358, 363–64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In making such a determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses. *Id. See also Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983). Moreover, federal courts are required to give deference to factual determinations made in state court and "[a]ny conflicting inferences arising from the record ... should be resolved in favor of the prosecution." *Heinish v. Tate*, 1993 WL 460782, at *3 (6th Cir. 1993) (citing *Walker*, 703 F.3d at 969–70*.) See also Wright v. West*, 505 U.S. 277, 296, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (the deference owed to the trier of fact limits the nature of constitutional sufficiency review.)

Consistent with these principles, the Supreme Court has emphasized that habeas courts must review sufficiency of the evidence claims with "double deference:"

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, 'it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.' *Cavazos v. Smith*, 565 U.S. 1, ——, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (*per curiam*).  And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U.S. 766, ——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 132 S.Ct. 2060, 2062, 182 L.Ed.2d 978 (2012).  Under this standard, "we cannot rely simply upon our own personal conceptions of what evidentiary showings would be sufficient to convince us of the petitioner's guilt," nor can "[w]e ... inquire whether any rational trier of fact would conclude that petitioner ... is guilty of the offenses with which he is charged." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  Rather, a habeas court must confine its review to determining whether the state court "was unreasonable in its conclusion that a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial." *Id.* (emphasis in original) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009)).

Upon review of the trial transcript, this Court finds the state appellate court reasonably determined Dingers' convictions were supported by sufficient evidence. In resolving Dingers' sufficiency of evidence claim, the state appellate court accurately summarized the evidence and correctly identified the applicable law. As the state appellate court pointed out, evidence was presented through the testimony of the police officers. (Doc. No. 22-1, PageID # 308.) Dinger pushed his way past M.D. into her home, wrapped the victim in a blanket, threw her over his shoulder, put her in his car, and drove her to his apartment. (*Id.*) There was testimony he did not answer the door, and once police breached the door with a battering ram,

the victim appeared disheveled, distraught, and upset. (*Id*.) She later indicated to police that she was unable to call out to them when they first knocked because Dinger held her down with a pillow over her face. (*Id*.) The state appellate court deemed this evidence sufficient if believed by a jury to convict Dinger of kidnapping. (*Id*.)

The state appellate court further noted during the trial, testimony from the investigating officers was presented that Dinger had been following the victim and her friend. (*Id*. at PageID # 309.) Dinger admitted he went to victim's apartment uninvited at 4:00 a.m. (*Id*.) A neighbor of the victim informed police she observed an incident where Dinger pounded on the victim's door as she screamed at him to leave or she would call the police. (*Id*.) There was also testimony the victim and her sister had a 'pact' whereas the victim would stay in contact with her sister by texting or calling every hour. (*Id*.) The state appellate court concluded this to be sufficient evidence to uphold the charge of menacing by stalking. (*Id*.) Again, it is not for this Court to weigh evidence or determine credibility. *See Jackson*, 443 U.S. at 317-19; *Coleman*, 566 U.S. at 651.  Further, any state law claim under the Ohio Constitution is not cognizable on federal habeas review.

Under the "double deferential" standard, the Court cannot say the state court "was unreasonable in its conclusion that a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial." *Brown v. Konteh*, 567 F.3d at 205.  Accordingly, this Court find Ground Three lacks merit and should be denied.

### V.    Conclusion

For all the reasons set forth above, it is recommended that the Petition be DENIED.


Dated: June 5, 2024                              *s/ Jonathan Greenberg*
                                                 Jonathan D. Greenberg
                                                 United States Magistrate Judge

## <u>OBJECTIONS</u>

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).